Good morning. I'm David Porter and I'm from the Federal Defender's Office in Sacramento and I represent Petitioner Vashon Tyrone Jackson. There are two hurdles we have to overcome to obtain federal habeas relief in this action. The first is to show that Mr. Jackson's unlawful custody is the result of intentional or negligent conduct on the part of the prison officials. If that is so, then there was no jurisdiction in the Superior Court. The second hurdle is to show under the Anti-Terrorism and Effective Death Penalty Act that clearly established law as determined by the United States Supreme Court shows that if a trial court lacks jurisdiction, a petitioner held under its judgment might be discharged from custody on a federal writ of habeas corpus. I'd like to address the first issue because I think it goes to the heart of this case. And Respondents and we have a very fundamental difference in the reading of California law on this subject. Respondents say that whether the custody is lawful or not is irrelevant to the jurisdictional issue. As long as the person is in the physical custody of the Department of Corrections, that is sufficient. That is incorrect. Doesn't section 6601 say that explicitly, the revised 6601? The revised section that was not in applicable at the time of Mr. Jackson's proceedings says that as long as the custody was the result of a good faith mistake of law or fact, then that does not deprive the court of jurisdiction. So the issue is not lawful or unlawful custody. The issue, rather, is whether the custody, if it is unlawful, is the result of a good faith mistake of law or fact, in which case there is jurisdiction, or if it's the result of negligence or intentional misconduct. Well, there's no evidence of bad faith in this record, is there? No, but there is at the least evidence of gross negligence in the way that the prison officials acted in this case. Counsel, if that, if the, he was ordered to be released at 12 a.m. and the extension was to begin at 12.01, if that order had said 1159 instead of 12.01, would you be here today? Oh, yes, Your Honor. That is just, that is, that was the backup argument. The three-day hold under Penal Code section 3056 was unlawful under the Supreme Court decision in 1973 of In re Law. And so that whole three days was not authorized. In addition, the 45-day regulatory hold under 26001 of the, of Title 15, that 45-day hold was also unlawful because that applies only when there is a good faith mistake. Well, doesn't In re Law allow a hold for a parolee? And was it Mr. Jackson, a parolee at 12.01? No. He was within the confines of the prison. And 3056 of the Penal Code allows a parole agent to take someone who is out of the physical confines of the prison but who is a parolee and put them back into prison subject to a probable cause hearing that they violated  parole. Well, that seems like a pretty technical argument. Why wouldn't that fall within this good faith mistake of law or fact? Because it's not technical at all. It's a very, very clear distinction between someone who is in prison, and Mr. Jackson very clearly was in prison. He was not a parolee on parole at that time. And that's what In re Law says. That's what 3050s, the plain language of 3056 says. But also you have this judicial construct from 1973 that says very clearly that it is only for the purpose of having the parole officer take someone who is on parole out of prison, put them into jail pending the probable cause hearing. Assuming Mr. Jackson had been released, would he have been on parole? Yes. And wouldn't California officials have the authority under the Sexual Predators Act to impose a hold on him under that status? Not once he's already out on parole. They would have had to put him back into the lawful custody of the Department of Corrections before proceeding on the SVPA law. And that's under 66. And I have actually, that brings me to a fundamental question I have. Assuming everything you say is correct, his two-year term under the initial decision expired and he was then in custody, he was subject again to the provisions of the act and was found again for another two-year term and, you know, on and on and on and here we are. Why haven't those subsequent proceedings cured any of the procedural defects that you're arguing this morning? I feel like it's Groundhog Day, Your Honor, the move that keeps repeating over and over again. Yeah, it is. It is. But, you know, if they do it a second time and they do it right, what's the, you know, habeas is come and gone. It's now in lawful custody. Maybe you've got a 1983 action for the two years, for the two-year period. I think if this Court goes back and reads Judge Kaczynski's opinion in the original appeal in this case, it's very clear that if Mr. Jackson has standing, then he, then this is all traceable to the original confinement. And if that original confinement was unlawful without jurisdiction, then he has a remedy in federal habeas. I think if you look back at that original decision, that's very clear. And then we spent three years back in the period that Mr. Jackson did have standing. But if they had subsequent lawful authority to apply the provisions of the Act, it doesn't matter that the original confinement was unlawful, does it? There's no fruit-of-the-poisonous-tree doctrine to jurisdiction. It does matter, because that's the whole basis of the argument, is that he must be in the lawful custody of CDC. And if that is right as an initial matter, that's right as each one of the involuntary petitions are filed. But then how do you overcome the revisions to 6601 that only require actual custody at the time the Act is imposed on the prisoner? We have three responses to that. First of all, Your Honor, the Respondent has waived that argument by not raising it in the district court. It appears for the very first time in its answering brief. Secondly, that provision applies prospectively only as a statute. That's the general assumption, that statutes apply prospectively. And finally, the unlawful custody of the prison. This one says it goes back to January 1, 1996, so it explicitly has a retroactive application. Even if that is correct, Your Honor, the very terms of it limit it to good-faith application of the law, a good-faith mistake of law or fact. And in here, in this case, the 3056 hold was so clearly illegal that that provision is inapplicable. And I'd like to cite the case of Johnson v. Nelson. Thank you, Your Honor. Johnson v. Nelson, which is cited in both parties' briefs, that says custody for purposes of the SVP Act, therefore, would not exist under California law if the State had acted negligently or intentionally to keep the inmate incarcerated in order to retain jurisdiction in an SVP case. And they cite Johnson v. Nelson in respect to Whitley II, the California case for that proposition. And also, Judge Tallman's decision in Hubart, which is at 379 Fed 3rd 773, which puts it a little differently. It says, there is no due process violation where the person was not in lawful custody at the time the petition was filed, provided that custody resulted from a good-faith error rather than negligent or intentional wrongdoing. Counsel, my question. And this is very conceptually hard case to get one's hands around for me. But so if I'm missing something, you can tell me. But why is it not a question of state law whether under California's sexually violent predator act, they have California court jurisdiction over a person in custody unlawfully? In other words, couldn't California interpret their predator act to say, we can start these proceedings against anyone in our custody lawfully? We have jurisdiction for our proceedings. I agree, Your Honor, they could. And it is a state law issue. But as I've just read from Johnson and as Judge Tallman refers to California law, that the California law is that the linchpin is negligent or intentional wrongdoing, not lawful custody. And in this case, where there is no reasoned decision of the state court of appeal or the state supreme court, as Justice Berzon explained in Himes v. Thompson, this court is obliged to review the state law, the embedded state law question of whether there was intentional or negligent wrongdoing on the part of state law issue, but that does not immunize the case from federal habeas review when the allegation is that the due process clause of the 14th Amendment has been violated because a court without jurisdiction has rendered a void judgment. Could I ask one follow-up question based on Judge Gould's question? Why isn't your claim procedurally barred because of your failure to raise it on direct appeal? The jurisdiction argument has always been there. You had a direct appeal up through the state system, didn't raise it. Why do we have jurisdiction now under AEDPA to review it? Well, procedural bar is not a jurisdictional issue, first of all, under AEDPA or pre-AEDPA law. Secondly, Respondent has never claimed that it's procedurally defaulted. There was no ruling in the district court that this was procedurally defaulted. And the well-established rule in federal courts is that jurisdiction is an issue that can be raised at any time. I'd like to reserve the rest of my time. All right. Let's hear from the State. Good morning, Your Honors. Craig Myers with the California Attorney General's Office for Appellees. Appellees have always stated that this is a State law question, and Mr. Porter has indicated it is a State law question. And as the analysis and the questioning goes, we're looking into State law. The claim as stated is that the State law did not follow its own statutory scheme in placing these three-day and then a subsequent 45-day hold. The Sexually Violent Predator Act went into effect on January 1st of 1996. Appellant in this case was set to be released on February 25th of 1996 on a parole hold, which actually, because he was a parole hold, the case of in re law that counsel cited actually does apply. In reading in re law the other day, I have a direct quote. The parole agent may place the parole hold, the parolee, in a local jail, or if he is already in jail, prevent him from being released on bail on his own recognizance or after the expiration of any sentence, the parolee may be required to serve. And that's at 10 Cal 3rd, page 24, footnote 2. It becomes a big issue of which hold was applied for the three-day hold in this case, which was to make sure that the State, the Board of Prison Terms had enough time to evaluate appellant to see if he met the criteria of this brand-new Sexually Violent Predator Act. So looking at State California law and in re law, he is already in jail and he is a parole hold. He was still in the confines of the prison. He was never released. They placed his hold, and I think it is important that this one minute that they're arguing, that he was supposed to be released on February 25th, and the parole hold, which was placed under penal code section 3056 and the California code of regulations 2600.1, which was part of the emergency legislation for the SVP Act to place both a three-day hold and a subsequent 45-day hold, where the subsequent 45-day hold also had a probable cause hearing to hold him beyond his release date, that he was never released from prison. He was still always in custody. Justice, clarify something for me. Was the three-day hold done pursuant to provision of the SVPA, or was that a parole hold? To the provision of the SVPA, which was in the regulations, Chapter 15, Section 2600.1 provides for the circumstances that we had where the evaluation might not be done timely, and I have it here. It says that the Board of Prison … Allows you to hold him for another three days while you complete the proceedings. Correct. And so we have that in effect, which increases it to February 28th. Within that time, he has the 45-day hold. There's a good cause hearing. And within that time, everything's done properly. He's evaluated, he's identified, the two doctors identify him, and it's sent to Sacramento County, where they go ahead and they file a petition against him. It's all within the provisions, and that's why we made the motion of taking the position that this is not a Federal question. This is State law following and interpreting its own State procedures. Although one of the problems we have, as Mr. Porter pointed out, there really isn't a reason, decision by the California State courts adopting or endorsing the analysis that you've just given us. So aren't we required under Ninth Circuit law to reach that embedded State law question de novo? I don't believe so. We have a decision on the merits. This was brought up on direct appeal. I mean, this case, not this issue. It was brought on habeas in front of the Third District Court of Appeal and then the Supreme Court, and they were denied on the merits. There was no reason, decision, but this Court must presume that State law interpreting or State court interpreting State law followed State law, and there's a reason that it was denied, and the reason it was denied is because there was no merit. But I don't think our cases say that. I think if there's no reason, decision, we've got to figure it out for ourselves. Well, if that's true and this Court does want to make that analysis, this Court in Jackson v. Yilts said that they're bound by the final determination of the State highest court. I understand you're saying it's not the reason, decision, but as we go through, Section 6601, which was modified in 1999 and does specifically state that it's retroactive to any petitions filed after January 1st, 1996, which this case would be included, that you only need lawful custody. And Mr. Porter has made the argument that, well, he says it's not lawful custody and relies on Johnson v. Nelson. Why isn't that a good argument for the defense? Well, in that case, it's saying that the – if the custody – it needs to be in custody, not lawful custody, unless it's – there's a bad faith effort. And here we clearly don't have a bad faith effort. The law was brand new. The Court was – or the Board of Prisons was following all the procedures. They had hearings. They gave him the three-day hold, whether 3056 or 2601 applied. They followed that procedure. Now, there might be that one minute where they made a mistake, perhaps, but that's one minute. He wasn't released from the prison. He was still a parolee that they could have brought him back in the confines of the prison. Once he's in custody, then they had the 45-day probable cause hearing, and then all the procedural protections were followed in this case. So we have a case where you're going – if the Court does look at it, you're going to follow all of California law and all of California's procedures and how they held this person. And looking at the facts of this case, there's an argument that it was followed or that it was made in bad faith can't be – can't be sustained in this case. It was a brand new legislation. It was kind of a radically new legislation that they were doing to hold these sexually violent predators on a recurring two-year terms. The Board of Prison Terms was acting as best that it could, especially in this case where he had – he was supposed to be released less than two months before the statute became enacted. So the Court is – or the Board of Prison Terms is following its procedures. They're going ahead and they're finding that he was lawfully in custody and they're placing these holds on it. If this Court finds that he was not lawfully in custody, California State Court holds that lawful custody is not necessary as long as it is not in bad faith. Well, Chief Judge Kuczynski suggested in the earlier opinion in this case that the original detention would taint the subsequent detentions. I think that's the position that Mr. Porter was endorsing. Do you agree with that or did subsequent events here somehow – No, I do agree. Cure the taint. I do have to agree that the later petitions do relate back to the first petition. I conceded that one in front of Judge Kuczynski because I wanted him to reach the merits on appeal. He sent it back, discussed standing and mootness, which I wound up conceding, and the district court found that there was standing and the case was not moot. So we're here that his – he still has standing to claim allegations that were incorrect in the first petition. Thank you for that concession. Yes. If the Court has no further questions, Respondents have addressed in their briefs and here just that this is really a state law issue that we're relying on state court and the State Supreme Court has already spoken to this issue. If this Court does want to address the merits and look to the state court, Respondents' position would be at that point that the Board of Prison Determinants did follow California state law and that there was no bad faith or negligence on their part. Thank you very much. Okay. Mr. Myers, thank you. Mr. Porter, you reserve some time. Thank you, Judge Biby. I'd like to address your question first about whether this parole hold was pursuant to the SBPA or 3056. And if you'll refer to excerpts of record volume 2, page 113, it is elucidly clear where it says decisions, a probable cause hearing will be conducted by the Board of Prison Terms. Place 3056 PC hold, effective 1201 a.m. So that is the only basis for the decision. The decision was not based on 2600.1. You're saying that it was a parole hold, it was not an SBPA hold. That is correct. Judge Tinkovich is absolutely correct. The Ninth Circuit requires an independent review of the record under Himes v. Thompson, Luna v. Canberra, and other cases. The Johnson case was not limited to bad faith. The Johnson description of California law that's taken from Whitley and Judge Tallman's decision in Hubert refer to both intentional and negligent conduct that would defeat jurisdiction. And ---- Could you respond to counsel's 3056 argument that it, even if he were, should have been released, he was still subject to, you know, reincarceration, even under In Re Law? This is a newfound reading. This is the first time that I've heard of this reading, even though we've contended since the beginning of this litigation seven or eight years ago that In Re Law applies very clearly and is limited. I think counsel's misconception here comes from subdivision 3 in the footnote that he's referring to, footnote 2, when it says that this authorizes, the situation occurs when a parolee is completing a local jail sentence, during which time the authority may determine whether to maintain parole status in view of the conviction, which resulted in the jail sentence. And that was clearly not a situation occurring here. Mr. Jackson was in the custody of CDC on a parole violation, not from the ---- not completing a local jail sentence under the authority, the adult authority, which is what that references to. I'd like to conclude by reminding the Court of Justice Field, his statement in In Re Bonner, which I believe is directly on point in this case. He said, It is plain that such court, referring to criminal courts and general jurisdiction, have jurisdiction to render a particular judgment only when the offense charged is within the class of offenses placed by the law under its jurisdiction, and when, in taking custody of the accused, and in its modes of procedure to determination of the question of his guilt or innocence, and in rendering judgment, the court keeps within the limitations prescribed by the law, customary or statutory. When the court goes out of these limitations, its action to the extent of such excess is void. Therefore, we ask that the court reverse the decision of the district court and remand with instructions to grant the writ of habeas corpus. Okay. Thank you, counsel. Thank you. We thank both counsel for the argument in Jackson. Yes. I was wondering if we might take a five to ten minute break before the last argument. Yes. Let's just make it ten minutes and make it easy for us. Okay. The court will take a ten minute break and then resume with the last argument on the calendar. All rise.
judges: Gould, Bybee, Tymkovich